**John M. MINNECI, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15648.**

United States Court of Appeals
Seventh Circuit.

Oct. 12, 1966.

Kiley, Circuit Judge, dissented.

Arthur H. Grant, Chicago, Ill., for petitioner.

Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Howard J. Feldman, Meyer Rothwacks, David O. Walter, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KILEY and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

John M. Minneci (taxpayer) has filed a petition in this court seeking our review of a decision of the Tax Court of the United States entered December 10, 1965 which denied a motion theretofore filed to vacate an order entered July 29, 1965, which determined that taxpayer was not entitled to have the Tax Court's decisions [1] of June 21, 1965 [2] vacated or modified on his motions of June 24 and July 2, 1965.[3]

On September 22, 1965, attorney Arthur H. Grant filed his appearance for taxpayer and on October 7, 1965, the Tax Court entered another order giving taxpayer leave to file, by counsel, another motion (which had been presented September 28, 1965) to reconsider the rulings on the earlier motions. On the latter motion, a hearing was held before Judge Mulroney on December 6, 1965, when taxpayer continued to be represented by his present attorney, Grant. On December 10, 1965 the motion to reconsider the above matters was again denied, resulting in the present petition for review.

Taxpayer's counsel contends in this court that the decision of the Tax Court was entered under a misapprehension, that no evidence was introduced in support thereof and that he should have been allowed either to modify the "stipulated decision" or a trial on the merits. We reject these contentions.

Taxpayer's motions to reopen the proceedings were addressed to the sound discretion of the court and we would not be justified in overturning them in the absence of a showing that that court abused its discretion. The record reveals that taxpayer was informed of the amount and significance of the decisions to be entered against him. Not only did he learn this from the trial attorney for the Commission before the stipulations were signed, but Judge Drennen of that court carefully ascertained that taxpayer understood the stipulations before the decisions in question were entered.

We are convinced that the overwhelming evidence indicates that taxpayer signed the stipulations with an awareness of their significance and that therefore the Commissioner has met his

---

1. Immediately below the signature of the judge who entered these decisions appears a mimeographed statement signed by taxpayer, reading as follows: "It is hereby stipulated that the Court may enter the foregoing decision in the above-entitled case. * * *"

2. The hearing relating to these decisions was held June 14, 1965.

3. Taxes for the years 1954, 1957 and 1958 are here involved.

burden in sustaining the action of the Tax Court.

Accordingly we hold that the Tax Court did not abuse its discretion in denying taxpayer's motions to reopen. Therefore, its order should be and is hereby affirmed.

Order affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

The Commissioner determined deficiencies against petitioner of nearly $6,000 for the years 1954, 1957 and 1958. His attorney filed the petitions for redeterminations in the Tax Court, but thereafter withdrew. Petitioner, appearing pro se, and government counsel negotiated a "stipulated decision" on June 14, 1965, the day set for trial. The stipulation was made upon computations, a copy of which petitioner did not have until June 17. On June 24 Judge Drennen entered judgment pursuant to the stipulation.

In Washington, D.C., on July 28, 1965, petitioner pro se and government counsel appeared before Judge Drennen on motions to modify and vacate the "settlement decision." The judge, petitioner and counsel engaged in an extended colloquy in which petitioner, in response to the judge's question whether petitioner knew "what [he was] doing and agreed to the settlement," stated that he thought the decision was to be for $2,424.14, based on his figures, instead of $3,505.18, the amount of the judgment. He repeatedly emphasized that he had not seen the figures on which the judgment was based. The judge and petitioner were talking about different things. It is also evident from the transcript that petitioner and the court were not in communication as to whether petitioner wanted to reopen settlement negotiations or to have the case set for trial. Subsequently, Judge Drennen denied an August 23 motion to reconsider made by the petitioner pro se.

At that point petitioner obtained counsel, and on October 7, 1965, Judge Drennen granted leave to attorney Grant to file, for petitioner, another motion to reconsider the motions denied July 29. Notifying Mr. Grant of his order by mail, the judge noted the claim of probable injustice because of petitioner's pro se appearance July 28. He said that "to assure that petitioner's case is fully presented * * * by legal counsel" he had set the motion for hearing and the case for trial on the merits at the same time if the motion was granted. He urged both parties to be prepared for arguments on the motion and on the merits, since he was "making a special trip to Chicago to hear this matter. * * * *"

Because of petitioner's illness, the hearing was continued from November 2 to December 6. In the place of Judge Drennen, Judge Mulroney met with attorney Grant and government counsel December 6, 1965. Mr. Grant stated in substance that the July 28 hearing at which petitioner appeared pro se consisted not of testimony but of commingled argument and other statements. He admitted that "factually" the transcript showed "more or less" what occurred but said it did not reflect a lawyerlike *presentation* of petitioner's motions. Judge Mulroney replied that the court "doesn't pay much attention to the manner of presentation," and that so long as the "facts are all in there" he would take the case under advisement without further argument or testimony. The motion to reconsider the July 29 order filed before Judge Drennen, was denied by Judge Mulroney on December 10.

The foregoing chronicle of events demonstrates, I think, that Judge Drennen was not satisfied that justice had been done at the July 28 hearing and had decided to come to Chicago specially to rehear the motions upon a full presentation by attorney Grant. This promise made to petitioner's attorney was not fulfilled at the summary hearing on December 6, 1965. In my view, failure to keep the promise was an abuse of discretion.

The discretionary character of a trial judge's rulings on motions of this kind is based upon his presence and personal observation of the hearing in question, in this case, the hearing of July 28. Judge Drennen alone could have been aware of the subtleties of fair and adequate representation not reflected in the written transcript of the July 28 hearing.

The majority's view is that Judge Mulroney did not abuse his discretion by refusing to reopen the case. I do not think we need reach that point. Before ruling on the question of reopening the case to consider the validity of the June 14 stipulation, Judge Mulroney should have considered the question of adequacy of legal representation at the July 28 hearing. This he did not do. In my view he abused his discretion by denying the motion to reconsider without affording petitioner a full presentation by legal counsel as Judge Drennen contemplated.

I would reverse and remand for an opportunity for attorney Grant to present petitioner's motion to reconsider and vacate Judge Drennen's order of July 29 in which he refused to vacate or modify the original judgment.